THE HONORABLE MICHELLE L. PETERSON

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TERRANCE MOSS, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>             Plaintiff,<br><br>      v.<br><br>CLEO AI INC.,<br><br>             Defendant. | Case No. 2:25-cv-00879-MLP<br><br>**DEFENDANT'S MOTION TO DISMISS CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF**<br><br>**NOTE ON MOTION CALENDAR: JULY 30, 2025**<br><br>**ORAL ARGUMENT REQUESTED** |

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 1
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

1

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION...................................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

III. LEGAL STANDARD ............................................................................................. 5

IV. THE COURT SHOULD COMPEL ARBITRATION; IN THE ALTERNATIVE, IF
    THE COURT RETAINS JURISDICTION, THE COURT SHOULD DISMISS UNDER
    RULE 12(b)(6)......................................................................................................... 7

  A. The Federal Arbitration Act Requires Enforcement of Arbitration Agreements According
     to Their Terms.................................................................................................... 7

  B. The Parties Clearly and Unmistakably Delegated to the Arbitrator Any Issues of
     Arbitrability...................................................................................................... 10

  C. Plaintiff's Claims Fall Within the Scope of the Terms of Service ................... 11

  D. No Defense Exists to the Arbitration Agreement's Enforceability. .................. 11

  E. Plaintiff Has Not Adequately Alleged That Cleo Offers "Credit" Subject to a "Finance
     Charge." ............................................................................................................ 13

     1. Cleo Does Not Extend "Credit" as a Matter of Law Because Cash Advance Users
        Have No Repayment Obligation..................................................................... 13

     2. The Complaint Does Not Adequately Allege, Let Alone Demonstrate, That the
        Purported "Credit" Is Subject to "Finance Charges."................................... 18

        i.   Optional Express Fees Are Not Finance Charges.................................... 18

        ii.  Subscription Fees Are Not Finance Charges. ......................................... 20

  F. Should the Court Permit the Case to Continue and Find That the MLA Claim is Not
     Subject to Arbitration, the Court Should Nonetheless Dismiss the TILA Claim. ........... 22

  G. If the Court Retains Jurisdiction Over the MLA and TILA Claims, it Should Dismiss the
     Complaint in its Entirety for Failure to State a Claim for Which Relief May be Granted.
     23

V.  CONCLUSION ..................................................................................................... 23

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - i
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Experian Info. Sols. Inc.*,
No. SA-24-CV-00157-XR, 2024 WL 2228164 (W.D. Tex. May 16, 2024)............................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................5

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)...........................................................................................................8

*AT&T Techs, Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986).........................................................................................................11

*Beach v. Ocwen Fed. Bank*,
523 U.S. 410 (1998).........................................................................................................15

*Bell Atl. Corp v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................5

*Bergersen v. Comm'r of Internal Revenue*,
109 F.3d 56 (1st Cir. 1997)...............................................................................................16

*Berman v. Freedom Fin. Network LLC*,
30 F.4th 849 (9th Cir. 2022) ..............................................................................................8

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ............................................................................................8

*Burnett v. Ala Moana Pawn Shop*,
3 F.3d 1261 (9th Cir. 1993) ..............................................................................................16

*Campos v. Big Fish Games, Inc.*,
No. C22-1806-RSM, 2024 U.S. Dist. LEXIS 98303 (W.D. Wash. June 3,
2024).................................................................................................................................5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ............................................................................................8

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994) ...............................................................................................5

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - ii
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

*Cockerham v. Sound Ford Inc.*,
    No. C06-1172JLR, 2006 U.S. Dist. LEXIS 71201 (W.D. Wash. Sept. 29,
    2006) ................................................................................................................................12

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) ..........................................................................................7

*Davis v. Nordstrom, Inc.*,
    755 F.3d 1089 (9th Cir. 2014) ..........................................................................................7

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ...........................................................................................................7

*Dep't of Soc. & Health Servs. v. Olver (In re Estate of Burns)*,
    928 P.2d 1094 (Wash. 1997)............................................................................................14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ............................................................................................6

*Espin v. Citibank, N.A.*,
    126 F.4th 1010 (4th Cir. 2025) .......................................................................................22

*Est. of Bolles v. Commissioner*,
    No. 22-70192, 2024 U.S. App. LEXIS 7612 (9th Cir. Apr. 1, 2024)....................................15

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)............................................................................................................8

*Ford Motor Credit Co. v. Milhollin*,
    444 U.S. 555 (1980)..........................................................................................................18

*Gandee v. LDL Freedom Enters., Inc.*,
    293 P.3d 1197 (Wash. 2013)............................................................................................12

*Gershfeld v. Teamviewer United States Inc.*,
    No. 21-55753, 2023 U.S. App. LEXIS 1429 (9th Cir. Jan. 20, 2023)....................................6

*Ground Mgmt. v. Ycharts, Inc.*,
    No. CV 15-00055-RGK, 2015 U.S. Dist. LEXIS 190421 (C.D. Cal. May 8,
    2015) ..................................................................................................................................6

*Harmon v. Fifth Third Bancorp*,
    Case No.: 1:18-cv-00402, U.S. Dist. LEXIS 85771 (S.D. Ohio May 15, 2020)....................14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019)......................................................................................................8, 10

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

*Huertas v. Foulke Mgmt. Corp.*,
   No. 20-3443, 2021 U.S. App. LEXIS 35805 (3d Cir. Dec. 3, 2021)....................................21

*Johnmohammadi v. Bloomingdale's Inc.*,
   755 F.3d 1072 (9th Cir. 2014) .........................................................................................8

*Keebaugh v. Warner Bros. Ent. Inc.*,
   100 F.4th 1005 (9th Cir. 2024) .......................................................................................8

*Ketler v. PFPA, LLC*,
   132 A.3d 746 (Del. 2016) ..............................................................................................12

*Kilgore v. KeyBank, N.A.*,
   718 F.3d 1052 (9th Cir. 2013) (*en banc*) ......................................................................12

*Laatz v. Zazzle, Inc.*,
   682 F. Supp. 3d 791 (N.D. Cal. 2023) ............................................................................6

*Marbury v. Madison*,
   5 U.S. 137 (1803).........................................................................................................17

*Mayhall v. Amazon Web Servs.*,
   No. C21-1473-TL-MLP, 2022 U.S. Dist. LEXIS 126094 (W.D. Wash. May
   24, 2022) .......................................................................................................................6

*Mortensen v. Bresnan Commn's, LLC*,
   722 F.3d 1151 (9th Cir. 2013) .......................................................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)......................................................................................................7, 11

*Mundle v. Doxo, Inc.*,
   No. C24-0893 TSZ, 2025 U.S. Dist. LEXIS 72581 (W.D. Wash. Apr. 16,
   2025) .............................................................................................................................6

*Oberstein v. Live Nation Entm't, Inc.*,
   60 F.4th 505 (9th Cir. 2023) .......................................................................................8, 9

*Olson v. Unison Agreement Corp.*,
   No. 2:22-cv-01859-RAJ, 2023 U.S. Dist. LEXIS 153624 (W.D. Wash. Aug.
   30, 2023) .................................................................................................................15, 16

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) .......................................................................................10

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - iv
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

*Pollice v. Nat'l Tax Funding, L.P.*,
   225 F.3d 379 (3d Cir. 2000)............................................................................14

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
   862 F. 3d 981 (9th Cir. 2017) .......................................................................10

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010)....................................................................................5, 10

*Rummel, Klepper & Kahl, LLP v. Del. River & Bay Auth.*,
   No. 2020-0458-PAF, 2022 WL 29831 (Del. Ch. Jan. 3, 2022) ...............12, 13

*Saeedy v. Microsoft Corp.*,
   757 F. Supp. 3d 1172 (W.D. Wash. 2024)......................................................8

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .........................................................................6

*Veale v. Citibank, F.S.B.*,
   85 F.3d 577 (11th Cir. 1996) .......................................................................20

**Statutes**

9 U.S.C. § 1 (Federal Arbitration Act)............................................... *passim*

9 U.S.C. §§ 3–4 (Federal Arbitration Act).......................................1, 3, 5

10 U.S.C § 987 (Military Lending Act) .............................................. *passim*

10 U.S.C. § 987(f)(4) (Military Lending Act) ...................................10

15 U.S.C. 1692a(5) (Fair Debt Collection Practices Act)..................14

15 U.S.C. § 1601 (Truth in Lending Act)............................................ *passim*

50 U.S.C. §§ 3901-4043 (Service Members Civil Relief Act) ...................22

**Rules and Regulations**

12 C.F.R. 1026.4(c)(4).......................................................................20, 21

12 C.F.R. § 226.2(a)(13) ..................................................................15

12 C.F.R. § 226.5(c)..........................................................................14

12 C.F.R. § 1026, Supp. I .................................................................. *passim*

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - v
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

12 C.F.R. § 1026.2(a)(14) ........................................................................................14

12 C.F.R. § 1026.2(a)(17)(i) .....................................................................................13

12 C.F.R. § 1026.4(a) ..........................................................................................18, 21

12 C.F.R. § 1026.17(b) ............................................................................................15

32 C.F.R. § 232.2(a)(1) .............................................................................................18

32 C.F.R. § 232.3(d) .................................................................................................14

32 C.F.R. § 232.3(f)(1) .............................................................................................13

32 C.F.R. § 232.3(f)(1) .............................................................................................18

32 C.F.R. § 232.3(g)(1) .............................................................................................13

32 C.F.R. § 232.3(h) .................................................................................................14

32 C.F.R. § 232.3(n) ............................................................................................18, 19

32 C.F.R. § 232.3(n) .................................................................................................21

32 C.F.R. § 232.3(s) .................................................................................................15

32 C.F.R. § 232.3(s) .................................................................................................19

32 C.F.R. § 232.4(c)(1)(iii)(C) ................................................................................21

32 C.F.R. § 232.4(c)(1)(iv) ......................................................................................21

32 C.F.R. § 232.8(a) .................................................................................................17

32 C.F.R. § 232.13(a) ...............................................................................................15

61 Fed. Reg. 49237 (Sept. 19, 1996) ......................................................................19

65 Fed. Reg. 17129 (Mar. 31, 2000) .......................................................................17

67 Fed. Reg. 72518 (Dec. 6, 2002) .........................................................................20

68 Fed. Reg. 16185 (Apr. 3, 2003) .........................................................................20

75 Fed. Reg. 58539 (Sept. 24, 2010) ......................................................................20

AAA Rule R-7(a) ......................................................................................................10

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - vi
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

1    Fed. R. Civ P. 12(b)(6).................................................................................... *passim*

2    Fed. R. Evid. 201(b)........................................................................................6

3    **Other Authorities**

4    CFPB, *Order to Terminate Sandbox Approval Order* (June 30, 2022),
5        https://files.consumerfinance.gov/f/documents/cfpb_payactiv_termination-
         order_2022-06.pdf .................................................................................19

6
     CFPB, Payactiv Approval Order, at 5 (Dec. 30, 2020),
7        https://files.consumerfinance.gov/f/documents/cfpb_payactiv_approval-
         order_2020-12.pdf .................................................................................19
8

9    *Debt,* Black's Legal Dictionary (12th ed. 2024)..........................................14

10   *Debt*, Merriam-Webster, *https://www.merriam-webster.com/dictionary/debt* (last
         updated Apr. 20, 2025) ..........................................................................14
11

12   *Debt*, Wex, *https://www.law.cornell.edu/wex/debt* (last updated Sept. 2021)...........................14

13   Office of the Comptroller of the Currency, Comptroller's Handbook, *Consumer
         Compliance, Military Lending Act, Appendix D: Fees and Charges*
14       *Comparison (MLA MAPR and Regulation Z Finance Charge)* (Version 1,
         May 2018)..........................................................................................21
15

16   Venmo, *Standard Bank Transfers FAQ*, https://help.venmo.com/hc/en-
         us/articles/235399967-Standard-Bank-Transfers-FAQ (last visited June 15,
17       2025) .................................................................................................19

18

19

20

21

22

23

24

25

26

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - vii
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

1    Defendant Cleo AI Inc. ("Cleo") hereby moves to dismiss class claims and stay individual

2    claims in favor of arbitration, or for alternative relief, regarding the Complaint of Plaintiff Staff

3    Sergeant Terrance Moss.  Pursuant to Your Honor's Meet and Confer Requirement, counsel for

4    Defendant and Plaintiff met and conferred regarding this motion on June 12, 2025.  At this meeting,

5    the parties discussed that Defendant would file a motion to compel arbitration or the alternative

6    dismiss and counsel for Defendant previewed what arguments Defendant would make with regard

7    to the arbitration provision and application of the relevant statutes.

8                            **I.    INTRODUCTION**

9    Plaintiff Staff Sergeant Moss has no claim against Cleo AI Inc. ("Cleo") under either the

10   Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, ("TILA") or the Military Lending Act, 10 U.S.C

11   § 987, *et seq.*, ("MLA").  To state a claim under either TILA or MLA, Plaintiff must plausibly

12   allege that Cleo offers "credit" that is subject to "finance charges," as those terms are defined for

13   purposes of MLA and TILA.  The Complaint does neither.  Non-recourse advances like those that

14   Cleo offers through its Cash Advance service are not "credit" as a matter of law.  Because Plaintiff

15   agreed to arbitrate any disputes with Cleo (and vice versa), his claims should be compelled to

16   arbitration and the class claims should be dismissed.  To the extent the Court declines to compel

17   arbitration and retains jurisdiction over this action, the Complaint should be dismissed for failure

18   to state a viable claim for which relief may be granted pursuant to Fed. R. Civ P. 12(b)(6) ("Rule

19   12(b)(6)").

20   Cleo operates a personal finance mobile application, which helps users budget, save, build

21   credit, and obtain cash advances.  Cleo offers certain premium services as part of a subscription

22   package; other services, including Cash Advance, are available without a subscription.  Baker

23   Decl., Ex. 1.[1]  Cleo's paid subscription services include its Personal Financial Management

24   Services, which are a suite of services and features to enable users to obtain insight into their

25

26   ---
     [1] Cleo's Terms of Service ("TOS") are incorporated by reference in the Complaint.  *See, e.g.*, Compl. ¶ 11, 99.  The
     TOS may also be judicially noticed.  *See* Section III, *infra*.

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

spending data and trends as well as to help them budget and save.  *Id*. at 3.  Other premium features available under the paid subscription tier include a credit score monitoring service, credit building, and cash advances, among others.  *Id*.  Users may also obtain a Cash Advance without purchasing a subscription by emailing Cleo and asking to take an advance without subscribing to Cleo Plus. *Id*. at 6.  At the time Plaintiff signed up, there were two tiers of subscriptions—Cleo Plus for $5.99 per month and Cleo Builder for $14.99 per month.  *Id*. at 5. Subscriptions can be cancelled in the Application, and Subscription Fees are refunded within a grace period.  *Id*.  Moreover, Cleo attempts to avoid charging the Subscription Fee if they detect that there are not sufficient funds to cover the Subscription Fee.  *Id*. at 6.  Non-subscription services include financial management services, budget management services, and savings goals.  *Id*. at 3.

The Cash Advance Service enables users to access their accrued, unpaid income.  *Id*. at  6.[2] Cash Advances are non-recourse.  Cleo's users have no contractual or legal obligation to repay any Cash Advance that they take.  *Id*.  In fact, Cleo states that it will not engage in debt collection or report users to any consumer reporting agency.  *Id*. at 7.

Cleo users agree to Cleo's Terms of Service ("TOS") when they sign up with Cleo.  The TOS governs Cleo's relationship with members (and vice versa).  Baker Decl., Ex. 1.  Like every other Cleo user, Plaintiff agreed to Cleo's TOS.  Among other provisions, the TOS contains an Arbitration Provision that requires Plaintiff and the putative class members to resolve all disputes with Cleo (and vice versa) via informal dispute resolution and arbitration.  The Arbitration Provision also expressly precludes class actions.  Baker Decl., Ex. 1 at 26.  Plaintiff does not allege that he chose to opt out of arbitration.  Because Plaintiff's claims are covered by the Arbitration Provision, they must be arbitrated on an individual basis.  To the extent Plaintiff now seeks to avoid his clear agreement to arbitrate, then it is for an arbitrator to decide the applicability and enforceability of the Arbitration Provision.  *See* Section IV.A, *infra*.

---

[2] Cash Advance was also historically known as "Salary Advance."  *See* Baker, Decl., Ex. 1.

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 2
CASE NO. 2:25-CV-00879-MLP

1    Should the Court permit the case to proceed despite its fatal deficiencies, the Court should

2    order Plaintiff to submit his individual claims for arbitration, dismiss the MLA and TILA class

3    claims, and stay the civil action pending completion of the arbitration.  In the alternative, if the

4    Court determines that the Arbitration Provision is not enforceable as to MLA claims by Covered

5    Members and dependents, the Court should dismiss the TILA class claims.  To the extent the

6    Court denies Defendant's motion to compel arbitration and retains jurisdiction over this action,

7    the Complaint should be dismissed for failure to state a viable claim for which relief may be

8    granted pursuant to Rule 12(b)(6).

9              **II.    FACTUAL AND PROCEDURAL BACKGROUND**

10    Plaintiff alleges that he took Cash Advances in 2024.[3]  Compl. ¶ 81.  As part of the

11    application and signup process, Plaintiff would have been presented with the Terms & Conditions

12    directly below the "I want Cleo Plus" or "Continue with Cleo Free" button with the clear

13    disclosure "In continuing you agree to these." [4]

---

[3] Plaintiff does not allege when he signed up with Cleo, or when he started taking advances.  Cleo's records of Plaintiff's signup and transactions, which are incorporated by reference in the Complaint, indicate that Plaintiff signed up in November 2021.  *See* Baker Decl, Ex. 3.  *See* Section III, *infra*.

[4] Cleo's app flow has varied over time.  Plaintiff is vague as to the temporal nature of his allegations.  This motion addresses the app flow as it existed when Plaintiff signed up in 2021.  This motion quotes from the 2021 Arbitration Provision, which the Plaintiff necessarily agreed to, unless stated otherwise.

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 3
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

1

2

3

4

5

6

7

8

9

10

11

12

13

14



Baker Decl., Ex. 2, Cleo Plus
Sign Up Screen (2021)

15    The TOS contain a standalone Arbitration Provision section, which states, in relevant

16  part:[5]

17    YOU HAVE READ THIS PROVISION CAREFULLY AND UNDERSTAND
    THAT IT LIMITS YOUR RIGHTS IN THE EVENT OF A DISPUTE BETWEEN

18    YOU AND US.  YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO
    REJECT THIS PROVISION AS PROVIDED BELOW UNDER "OPT-OPT OUT

19    ARBITRATION PROVISION."

20    You and the Cleo Parties ("we," "us," and "our" for purposes of this section) agree
21    that the sole and exclusive forum and remedy for resolution of a Claim be final and
    binding arbitration pursuant to this Section (the "Arbitration Provision"), unless
22    you opt out as provided below . . . The scope of this Arbitration Provision is to be
    given the broadest possible interpretation that is enforceable.

23

24  Baker Decl., Ex. 1 at 23.  The Arbitration Provision further provides that in using Cleo, Plaintiff

25  agrees to a class action waiver.  *Id.* at 26.  Section 22.3 details exceptions and opt-out rights.  None

26  ────────────────
[5] The TOS is governed by Delaware law.  Baker Decl. Ex. 1 at 27.

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 4
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

of the exceptions apply, and Plaintiff does not allege that he sought to opt out of the Arbitration Provision.

On April 10, 2025, Plaintiff, who alleges to be an active-duty service member, Compl. ⁋ 104, filed a complaint against Cleo in the Superior Court of the State of Washington for the County of King alleging violations of MLA and TILA, seeking to represent a class of individuals for each claim, and to bring suit on behalf of the general public. *See* Compl. ⁋ 109. On May 9, 2025, Cleo timely removed the action to this Court. *See* ECF No. 1.

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, permits a party to a written arbitration agreement to petition for an order compelling the parties to arbitrate. Under the FAA, a federal court "***shall*** . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," and "***shall***" compel the parties into arbitration. 9 U.S.C. §§ 3– 4 (emphases added); *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). It follows that courts have the authority to stay such actions under Section 3 of the FAA or dismiss them. *Campos v. Big Fish Games, Inc.*, No. C22-1806-RSM, 2024 U.S. Dist. LEXIS 98303, at *8 (W.D. Wash. June 3, 2024).

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. lqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). The court is not required to accept conclusory allegations or unreasonable inferences as true. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). Furthermore, the allegations must give fair notice to enable the opposing party to

1    defend itself effectively. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–

2    96 (9th Cir. 2014).

3         When deciding a motion to dismiss, courts may consider "documents attached to the

4    complaint, documents incorporated by reference in the complaint, or matters of judicial notice—

5    without converting the motion to dismiss into a motion for summary judgment." *United States v.*

6    *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court may take judicial notice of matters that are

7    either "generally known within the trial court's territorial jurisdiction" or "can be accurately and

8    readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

9    201(b).

10        Courts may incorporate by reference the terms of service where they are referenced in the

11    Complaint and are the basis of the claims. *See Mundle v. Doxo, Inc.*, No. C24-0893 TSZ, 2025

12    U.S. Dist. LEXIS 72581, at *11 (W.D. Wash. Apr. 16, 2025) (incorporating terms of service by

13    reference where claims included failure to make disclosures). Courts may also take judicial notice

14    of terms of service. *See, e.g.*, *Mayhall v. Amazon Web Servs.*, No. C21-1473-TL-MLP, 2022 U.S.

15    Dist. LEXIS 126094, at *13 (W.D. Wash. May 24, 2022). Because the Complaint refers to and

16    makes allegations regarding Cleo's sign up mechanism, Compl. ¶ 49, Cleo's sign up screen may

17    be incorporated by reference. *See Laatz v. Zazzle, Inc*., 682 F. Supp. 3d 791, 804 (N.D. Cal. 2023)

18    (incorporating by reference screenshots of the sign up page where representations made during

19    sign up form the basis for the claims). In the alternative, the court could take judicial notice of

20    these exhibits. *See E. G. Ground Mgmt. v. Ycharts, Inc.*, No. CV 15-00055-RGK (SSx), 2015 U.S.

21    Dist. LEXIS 190421, at *5 (C.D. Cal. May 8, 2015) (taking judicial notice of a sign up page where

22    plaintiff alleged that they opened an account and maintained a subscription, and claims relied in

23    part on the terms of the subscription). Because Plaintiff's sign up and agreement to disclosures

24    forms the basis for Plaintiff's TILA and MLA claims, the Plaintiff's subscription information

25    evidencing when he signed up and agreed to the disclosures also may be incorporated by reference.

26    *See Gershfeld v. Teamviewer United States Inc.,* No. 21-55753, 2023 U.S. App. LEXIS 1429, *2–

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 6
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

3 (9th Cir. Jan. 20, 2023) (where viability of claims rests on the extent and sufficiency of disclosures; the disclosures form the basis of the claims themselves); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (though not referenced in complaint, billing agreement was incorporated by reference because its terms were integral to claims in complaint). The Court may therefore consider Exhibits 1–3 to the Baker Declaration with this Motion to Compel Arbitration and in the Alternative Dismiss.

## IV.    THE COURT SHOULD COMPEL ARBITRATION; IN THE ALTERNATIVE, IF THE COURT RETAINS JURISDICTION, THE COURT SHOULD DISMISS UNDER RULE 12(B)(6).

The Court must compel arbitration because the Arbitration Provision is legally binding and covers the claims asserted. To give effect to the Arbitration Provision in accordance with the FAA, the Court should compel Plaintiff to arbitrate his claims individually, dismiss the class claims, and stay this action pending completion of the arbitration. To the extent the Court declines to compel arbitration and retains jurisdiction, it should dismiss the Complaint for failure to state a claim under Rule 12(b)(6).

### A.    The Federal Arbitration Act Requires Enforcement of Arbitration Agreements According to Their Terms.

The FAA "reflects a 'liberal federal policy' in favor of arbitration." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 346 (2011)). Accordingly, "[u]nder the FAA, the role of the district court is to determine if a valid arbitration agreement exists, and if so, whether the agreement encompasses the dispute at issue." *Id.* (citing *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1057 (9th Cir. 2013) (*en banc*)). Where a dispute falls within the scope of a valid agreement to arbitrate, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). And the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). These same principles

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 7
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

1  extend to the enforceability of class action waivers; when the agreement waives pursuit of claims

2  on a class-wide basis, federal courts must enforce those waivers under the FAA.  *See Concepcion*,

3  563 U.S. at 351–52; *see also Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074 (9th

4  Cir. 2014) ("[Plaintiff] can't argue that the class-action waiver is unenforceable under California

5  law.") (citing *Concepcion*, 563 U.S. at 346–48).

6      Where, as here, the parties delegate to the arbitrator the power to decide gateway

7  arbitrability issues—such as the validity and enforceability of the arbitration agreement—the

8  district court's inquiry is further constrained.  "[I]f a valid agreement exists, and if the agreement

9  delegates the arbitrability issue to an arbitrator, a court **may not** decide the arbitrability issue."

10 *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (emphasis added).  To

11 determine whether there is a valid delegation, the court undertakes a limited inquiry into whether

12 the parties "clearly and unmistakably" delegate gateway issues of arbitrability to the arbitrator.

13 *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

14     Federal courts determine the validity of an arbitration agreement by "apply[ing] ordinary

15 state-law principles that govern the formation of contracts."  *First Options of Chicago, Inc. v.*

16 *Kaplan*, 514 U.S. 938, 944 (1995).  Arbitration agreements are presumed to be valid, and the party

17 seeking to avoid arbitration bears the burden of demonstrating otherwise.  *See, e.g.*, *Chiron Corp.*

18 *v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also Allen v. Experian*

19 *Info. Sols. Inc.*, No. SA-24-CV-00157-XR, 2024 WL 2228164 (W.D. Tex. May 16, 2024)

20 (applying the same burden shifting principles when assessing a motion to compel arbitration in a

21 dispute involving allegations under the MLA).

22     In the Ninth Circuit, "internet contracts are classified 'by the way in which the user

23 purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps,

24 scrollwraps, and sign-in wraps.'"  *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th

25 Cir. 2024) (applying California law); *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1189 (W.D.

26 Wash. 2024) (applying *Keebaugh*, *Oberstein*, and *Berman* and noting that Washington law is

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 8
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

1   substantially similar to California in this regard). For one of these agreements to be enforceable
2   there must be (1) actual or constructive notice of the agreement and (2) a manifestation of mutual
3   assent. *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023).

4   The notice at issue here is akin to the agreements in *Oberstein*, which were held to be
5   enforceable: consumers are clearly apprised of the terms through a clear hyperlink, and manifest
6   assent by creating an account. This notice directly satisfies both *Oberstein* elements:

7   **Actual or Constructive Notice**. "[A] notice must be displayed in a font size and format
8   such that the court can fairly assume that a reasonably prudent Internet user would have seen it."
9   *Oberstein*, 60 F.4th at 515 (citing *Berman v. Freedom Fin. Network LLC*, 30 F.4th 849, 856 (9th
10  Cir. 2022)). Here, the hyperlinked terms are in legible size and clear font directly below the "I
11  want Cleo Plus" or "Continue with Cleo Free" button, which a user must click to proceed to make
12  an account. Baker Decl., Ex. 2. The font is of legible size and all links are in distinct purple text.
13  *Accord Oberstein*, 60 F.4th at 515. Cleo's app flow thus provides conspicuous notice such that it
14  is fair to assume a prudent internet user would have seen it. *Id.*

15  **Manifestation of Mutual Assent**. "[W]hether the user takes some action that
16  unambiguously manifests assent—is relatively straightforward." *Oberstein*, 60 F.4th at 515
17  (Citing *Berman*, 30 F.4th at 856). If a user is advised explicitly that the act of clicking will
18  constitute assent to the terms and conditions of an agreement, the users' click of a button or check
19  of a box can be construed as an unambiguous manifestation of assent. *See id.* Here, users are
20  required to click a "I want Cleo Plus" or "Continue with Cleo Free" button to create an account
21  and use Cleo, which is directly below the following statement: "Read Cleo's Terms & Conditions
22  and Privacy Policy. By continuing you agree to these." Baker Decl., Ex. 2. Until users click the
23  "I want Cleo Plus" or "Continue with Cleo Free" button indicating agreement to the terms, they
24  cannot create an account. Baker Decl., Ex. 2. Users therefore were advised explicitly that by
25  creating an account, they agreed to Cleo's terms, thereby unambiguously manifesting assent.

26

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 9
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

**B.**    **The Parties Clearly and Unmistakably Delegated to the Arbitrator Any Issues of Arbitrability.**

The Arbitration Provision in the TOS expressly delegates questions of its validity and enforcement to the arbitrator. The Arbitration Provision itself defines the "Claim" subject to binding arbitration as including those that concern the "validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement." Baker Decl. Ex. 1 at 23. Accordingly, to the extent Plaintiff intends to dispute the validity or enforceability of the Arbitration Provision, such questions are unmistakably delegated to the arbitrator, and arbitration is the proper forum to address them. *See Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F. 3d 981, 985–86 (9th Cir. 2017) (finding that the district court erred by enjoining arbitration under the FAA and by preventing the arbitrator from addressing the scope of arbitration when parties delegated such authority to the arbitrator).[6]

This would be true even if the Court were to find that the TOS governing Cash Advances fell within the MLA's protections. The MLA states that "no agreement to arbitrate any dispute *involving the extension of consumer credit shall be enforceable*." 10 U.S.C. § 987(f)(4) (emphasis added). The parties' agreement to delegate arbitrability is independent of the TOS. As the Supreme Court has explained numerous times, an agreement to have an arbitrator decide what issues are subject to arbitration is an "additional, antecedent agreement" to other issues in a contract. *Rent-A-Ctr.*, 561 U.S. at 70; *Henry Schein*, 586 U.S. at 68. Thus, even if, *arguendo*, Cleo's services, as generically described in the TOS, "involv[ed] the extension of consumer credit"—and they do not for the reasons explained herein—it does not follow that the MLA would govern the parties' wholly separate agreement on delegation. *See Rent-A-Ctr.*, 561 U.S. at 72 (it

---

[6] The parties also clearly and unmistakably delegated authority to the arbitrator by incorporating the AAA or Judicial Alternatives and Mediation Services ("JAMS") procedures. Baker Decl., Ex. 1 at 25. According to R-7(a) of the AAA Rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." For this reason, "[v]irtually every circuit to have considered the issue"—including the Ninth Circuit—"has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (emphasis added).

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 10
CASE NO. 2:25-CV-00879-MLP

1    "makes no difference" whether delegation clause appears in contract with other subject matter or

2    in standalone arbitration agreement).

3         C.    **Plaintiff's Claims Fall Within the Scope of the Terms of Service**

4         The FAA reflects a "liberal federal policy favoring arbitration agreements," the Supreme

5    Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in

6    favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25

7    (1983).  Thus, enforcement of an arbitration agreement "should not be denied unless it can be said

8    with positive assurance that the arbitration clause is not susceptible of an interpretation that covers

9    the asserted dispute." *AT&T Techs, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

10        In line with the FAA's goals, the Plaintiff and Cleo agreed that the "Arbitration Provision

11   is to be given the broadest possible interpretation that is enforceable."  Baker Decl., Ex. 1 at 24.

12   Such broad interpretation is not even necessary here, because Plaintiff's claims fall neatly within

13   the text of the applicable Arbitration Provision.  The parties expressly agreed "that the sole and

14   exclusive forum and remedy for resolution of a Claim be final and binding arbitration" unless there

15   is an opt out of arbitration as expressly described in the provision.  *Id*. at 23.  "Claim" is defined

16   in the Provision as any "past, present, or future claim, dispute, or controversy" between Plaintiff

17   and Cleo that "relat[es] to, or aris[es] out of, [the TOS] and/or the activities or relationships that

18   involve, lead to, or result from these Terms, including . . . the validity or enforceability of this

19   Arbitration Provision, any part thereof, or the entire Agreement." *Id.*  And the TOS "govern[s] . .

20   . use of the Site available at meetcleo.com . . . and certain products or services offered by Cleo . .

21   ." *Id.* at 1.  The Services governed by the TOS include the Advance Service.  *Id*. at 3.  Plaintiff's

22   claims fall squarely within the scope of the TOS because they are brought based on his use of

23   Cleo's mobile application and Cash Advances (the same applies for putative class members).  The

24   only proper interpretation is that the Arbitration Provision governs this dispute and any question

25   regarding the application of the Arbitration Provision must be delegated to the arbitrator.

26        D.    **No Defense Exists to the Arbitration Agreement's Enforceability.**

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 11
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

1    "The [FAA] makes an agreement to arbitrate 'valid, irrevocable, and enforceable . . . save

2    upon such grounds as exist at law or in equity for the revocation of any contract.'" *Kilgore*, 718

3    F.3d at 1057–58 (quoting 9 U.S.C. § 2).  This "savings clause" of the FAA "preserves generally

4    applicable contract defenses, such as fraud, duress, or unconscionability." *Mortensen v. Bresnan*

5    *Commn's, LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013).  But none of those arguments apply here—

6    indeed, Plaintiff has not even alleged that any of those defenses apply.  To the extent the Plaintiff

7    now seeks to raise any claim of unconscionability, it would be frivolous.

8        The party seeking to avoid arbitration bears the burden to prove such a defense (like

9    unconscionability).  *Cockerham v. Sound Ford Inc.*, No. C06-1172JLR, 2006 U.S. Dist. LEXIS

10   71201, at *3 (W.D. Wash. Sept. 29, 2006).  Cleo's TOS is governed by Delaware law, which

11   therefore applies to the unconscionability analysis.

12       Unconscionability has both a substantive and a procedural element.  In Delaware, the court

13   must find both procedural and substantive unconscionability.  *Rummel, Klepper & Kahl, LLP v.*

14   *Del. River & Bay Auth.*, No. 2020-0458-PAF, 2022 WL 29831, at *14 (Del. Ch. Jan. 3, 2022)

15   (citing *Chemours Co. v. DowDuPont Inc.*, 2020 Del. Ch. LEXIS 112, 2020 WL 1527783, at *12

16   (Del. Ch. Mar. 30, 2020)).[7]  Unconscionability is used sparingly to strike contract enforcement.

17   *Ketler v. PFPA, LLC*, 132 A.3d 746, 748 (Del. 2016).  For a contract clause to be unconscionable,

18   it must be "so one-sided as to be oppressive." *Rummel*, 2022 WL 29831, at *15.

19       In examining procedural unconscionability, Delaware courts will look at the bargaining

20   strength of the parties and whether the weaker "could make a meaningful choice." *Id*. at *14.

21   "There is no deprivation of meaningful choice if a party can walk away from the contract." *Ketler*,

22   132 A.3d at 748.  Here, there was a meaningful choice in entering the contract because Plaintiff

23   had the ability to opt out of the Arbitration Provision via its "Opt-Out" clause.  Baker Decl., Ex. 1

24

25   [7] In Washington, an agreement to arbitrate may be found unenforceable where either substantive or procedural unconscionability exists.  *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1199 (Wash. 2013).  The applicable arbitration agreement here is neither substantively nor procedurally unconscionable, so even under Washington law,

26   the arbitration agreement would not be found to be unconscionable.

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 12
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

at 24.  Plaintiff does not allege that he sought to opt-out.  Nor does Plaintiff allege a lack of "meaningful choice" to understand the terms of the contract—as discussed in Section II, *infra*, the Arbitration Provision is not buried within the TOS or otherwise hidden.

Substantive unconscionability examines whether terms evidence "a gross imbalance that shocks the conscience."  *Rummel*, 2022 WL 29831, at *14 (internal quotations omitted).  Plaintiff does not allege that Cleo's Arbitration Provision is imbalanced.  To the contrary, the Arbitration Provision applies to both parties in equal force and therefore binds both parties alike to submit claims to arbitration, subject to the same rules and procedures and the same advantages and disadvantages.  The Arbitration Provision is not hidden in fine print or phrased confusingly.  Accordingly, the Arbitration Provision is not unconscionable.

**E.    Plaintiff Has Not Adequately Alleged That Cleo Offers "Credit" Subject to a "Finance Charge."**

The MLA does not apply to all cash advances or even to all extensions of consumer-purpose credit.  To state a claim under MLA (or TILA), Plaintiff must adequately allege that the Cash Advance transactions at issue constitute "credit" ***and*** the "credit" must be subject to a "finance charge."  *See* 32 C.F.R. § 232.3(f)(1) (defining "consumer credit" under MLA); 12 § C.F.R. § 1026.2(a)(17)(i) (defining "creditor" under TILA, in relevant part).  Plaintiff has not done so, and thus Plaintiff cannot meet its Rule 12(b)(6) pleading obligations.  To have any chance of availing himself of MLA's prohibition on arbitration, Plaintiff would have to meet an even higher burden and affirmatively demonstrate that Cleo's Cash Advance product is "credit" subject to a "finance charge."  *See* Section IV.A, *supra* (arbitration agreements are presumed to be valid, and the party seeking to avoid arbitration bears the burden of demonstrating otherwise).

**1.    Cleo Does Not Extend "Credit" as a Matter of Law Because Cash Advance Users Have No Repayment Obligation.**

MLA protects "covered borrowers," which are defined as consumers that "become[] *obligated* on a consumer credit transaction."  32 C.F.R. § 232.3(g)(1)(emphasis added).  MLA in

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 13
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

turn defines credit as "the right granted to a consumer by a creditor to defer payment of debt or to incur debt and defer its payment." 32 C.F.R. § 232.3(h).[8] Without debt, MLA does not apply.

Debt is an obligation to pay some amount to a creditor. In ordinary usage, "debt" means "something owed" or "a state of being under obligation to pay or repay. . . ." Legal dictionaries define the term, for example, as a "financial liability or obligation owed by one person, the debtor, to another, the creditor."[9] The Fair Debt Collection Practices Act similarly defines debt as "any obligation or alleged obligation of a consumer to pay money . . . whether or not such obligation has been reduced to judgment." *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000) (construing the term "debt" under TILA consistent with its definition in the Fair Debt Collection Practices Act).[10]

Plaintiff has not demonstrated that Cash Advances are debt—and that's because Cash Advances are not debt. Under the TOS which governs Cash Advance transactions, "Cleo has no contractual or legal claim against you based on a failure to repay an advance." *See* Baker Decl., Ex. 1 at 7. Regulation Z, which implements TILA, and from which MLA draws certain definitions, including "closed-end credit," 32 C.F.R. § 232.3(d), underscores the point. Regulation Z requires that disclosures reflect the "terms of the ***legal obligation*** between the parties." 12 C.F.R. § 226.5(c) (emphasis added). "The legal obligation normally is presumed to be contained in the contract that evidences the agreement. But this may be rebutted if another agreement between the parties legally modifies that contract." 12 C.F.R. pt. 1026, Supp. I ¶ 5(c)-1.iii. Here, Plaintiff does not allege the existence of a legal obligation to repay arising from the contract that governs the Cash Advance (the TOS) or in any other operative agreement between users and Cleo. *See Harmon v. Fifth Third*

---

[8] TILA's definition of credit is essentially the same. *See* 12 C.F.R. § 1026.2(a)(14).

[9] *Debt*, Merriam-Webster, *https://www.merriam-webster.com/dictionary/debt* (last updated Apr. 20, 2025); *Debt*, Wex, *https://www.law.cornell.edu/wex/debt* (last updated Sept. 2021); 15 U.S.C. 1692a(5); *see also Debt,* Black's Legal Dictionary (12th ed. 2024) (debt means "[l]iability on a claim; a specific sum of money due by agreement or otherwise").

[10] Notably, so do interpretations of the term by Washington courts when presented with the term in the Washington constitution, statutes, and contracts. *See, e.g., Dep't of Soc. & Health Servs. v. Olver (In re Estate of Burns)*, 928 P.2d 1094, 1098 (Wash. 1997) (interpreting statutory reference to debt to mean a "fixed and certain obligation to pay money or some other valuable thing.").

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 14
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

*Bancorp*, Case No.: 1:18-cv-00402, U.S. Dist. LEXIS 85771, at *22–23 (S.D. Ohio May 15, 2020) (holding where a consumer "has no liability . . . for losses associated with [an advance]," such advance is not "credit" within the meaning of TILA, which is analogous in this instance with MLA).[11]  Similarly, MLA (and TILA) only applies to "consummated transactions."  32 C.F.R. § 232.13(a).  For these purposes, consummation means to "the time that a consumer becomes ***contractually obligated*** to a credit transaction."  12 C.F.R. § 226.2(a)(13) (emphasis added); *see also* 32 CFR 232.3(s) (assigning the meaning given in Regulation Z to certain terms undefined in MLA, of which "consummation" is one).[12]  Plaintiff makes no allegations that he was contractually obligated to a credit transaction with Cleo, and the TOS makes clear there is no legal or contractual obligation for Plaintiff (or the putative class members) to repay Cash Advances.  MLA does not apply.

The Complaint attempts, unsuccessfully, to overcome this fatal flaw by alleging that Cleo receives users' temporary authorization to debit a bank account or other account, and that earned wage access ("EWA") users in general have a high level of repayment.  *See* Compl. ¶¶ 78–82, 89 n. 37.  These factors are insufficient as a matter of law to convert a non-recourse advance into "debt."  If the advance of funds and expectation of repayment were sufficient to constitute debt, then investment contracts would be considered debt, and they are not.  In *Olson v. Unison Agreement Corp.*, No. 2:22-cv-01859-RAJ, 2023 U.S. Dist. LEXIS 153624, at *4 (W.D. Wash. Aug. 30, 2023), the court evaluated a transaction in which a putative lender advanced funds in exchange for a right that would, in all likelihood, have entitled the "lender" to receive the amount provided—and more—based on housing value appreciation.  But *Olson* determined that the transaction was not a loan (debt), despite the advance of money and actuarial likelihood of repayment; *Olson* instead examined the nature of the parties' obligations.  *See id.* ("Unison is not obliged to exercise its option (if, for example, home prices decrease).").  *See also Est. of Bolles v.*

---

[11] Because TILA is a disclosure statute, *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)), if there is no ***legal obligation*** to repay, there is nothing to disclose, and thus no violation of TILA.
[12] TILA includes similar language, requiring disclosures "before consummation."  12 C.F.R. § 1026.17(b).

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 15
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

1  *Commissioner*, No. 22-70192, 2024 U.S. App. LEXIS 7612, at *2 (9th Cir. Apr. 1, 2024) ("a[n

2  intra-family] bona fide creditor-debtor relationship . . . [is] characterized by a real expectation of

3  repayment ***and intent to enforce the collection of the indebtedness***") (citations omitted, emphasis

4  added); *Bergersen v. Comm'r of Internal Revenue*, 109 F.3d 56, 60 (1st Cir. 1997) (determining

5  payments were more akin to dividends than loans where "[t]he Bergersens knew that there was no

6  effective corporate constraint to induce repayment, nor . . . any meaningful tax consequences from

7  a permanent failure to repay."). Cleo advances funds pursuant to a contract and hopes for

8  repayment. But like the investors in *Olson*, Cash Advance users have no obligation to repay, with

9  the only consequence of not repaying being that the user is not able to take out a subsequent cash

10 advance.

11     The existence of a debit authorization is likewise insufficient as a matter of law to constitute

12 a repayment obligation. Charitable campaigns, for example, often obtain pledges for monthly

13 donations and a corresponding authorization to debit the donor's account. The charity may

14 reasonably expect such donations to occur as authorized. But donors typically do not become

15 indebted or contractually obligated to make donations. The authorization Cleo obtains is no more

16 evidence of an obligation by Cash Advance users to repay advances than it is evidence of an

17 obligation of a donor to donate. Likewise, TILA recognizes that a consumer may choose to prepay

18 a mortgage or student loan in full by authorizing a lender to debit her account or by establishing

19 other voluntary means of repayment (e.g. via payroll), but that the authorization alone does not

20 modify her obligation to repay the loan as agreed by the contract. *See* 12 C.F.R. pt. 1026, Supp. I

21 ¶ 17(c)(1)-2.ii (instructing creditors to disregard voluntary payments for determining the "legal

22 obligation" relevant for disclosure).

23     While courts do at times recharacterize sales transactions as loans (debt) in the absence of

24 contractual obligations, they do so *only* where the recipient is effectively coerced into repaying to

25 redeem an ownership right in property whose fair market value is equal to, or higher than, the

26 amount to be repaid. *See, e.g.*, *Burnett v. Ala Moana Pawn Shop,* 3 F.3d 1261, 1262 (9th Cir. 1993)

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 16
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

1  (finding a pawn transaction was a loan and not a sale where the amount advanced was far less than

2  the pawn's fair market value and thus the transaction was based on the consumer's need for cash

3  and not the value of the pawn).  Pawn transactions or sale-and-repurchase or sale-and-leaseback

4  transactions are effectively transactions in which the creditor's ownership right or interest in

5  property is their "recourse" for non-payment, since the result of non-payment is that the creditor is

6  made or remains whole.  Plaintiff makes no such allegations here, nor could he.  Nor does Plaintiff

7  allege that Cash Advances involve the sale of any consumer property (sham or otherwise), or that

8  Cleo strongarms consumers into repayment by withholding some item of value from them.  In fact,

9  the only consequence to users of failing to repay a Cash Advance is that the user will not be eligible

10  for another Cash Advance from Cleo.  Baker Decl., Ex. 1 at 7.[13]

11        Plaintiff's only remaining argument, then, is that examining the "nature" or "substance" of

12  the transaction reveals an "obligation to repay," notwithstanding the written agreement to the

13  contrary (and further arguing that such an inquiry is appropriate under MLA).  Plaintiff's burden

14  is to allege that the true nature of the transaction is one in which users are "obligated" on a debt.

15  But the Complaint does not dispute that Plaintiff could have avoided repayment simply by

16  notifying Cleo of his intention to revoke his debit authorization, or, for example, by closing his

17  bank account.  Nor does the Complaint allege that Cleo ignored revocations of debit authorizations.

18  Cleo's inability to enforce the putative repayment obligation, due to the user's right to freely revoke

19  the debit authorization and Cleo's disavowal of recourse, is determinative: Plaintiff has

20  demonstrated no repayment "obligation" and therefore no "credit."  Where a "creditor" has no

21  right to enforce a putative debt, there is no loan.  "It is a settled and invariable principle, that every

22  right, when withheld, must have a remedy, and every injury its proper redress."  *See Marbury v.*

23

24  _____
[13] Regulatory references to "deferred presentment transactions" cannot save Plaintiff's deficient claims.  *See, e.g.*, 32

25  C.F.R. § 232.8(a); 12 C.F.R. pt. 1026, Supp. I ¶ 2(a)(14).  At base, deferred presentment transactions involve "credit."  *See id.*; *see also Truth in Lending*, 65 Fed. Reg. 17129 (Mar. 31, 2000) (describing the consumer "repaying the

26  ***obligation***" in connection with deferred presentment transactions) (emphasis added).  Cash Advances do not meet the regulatory definition of credit, and thus are not deferred presentment transactions.  *See, supra*, p. 15-17.

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 17
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

*Madison*, 5 U.S. 137, 163, (1803) (citing to William Blackstone, *Commentaries on the Laws of England*).

The Complaint does not adequately allege, let alone affirmatively demonstrate, that Cash Advances are debt or that Cash Advance users become contractually obligated to repay these non-recourse advances.

<h3>2.     <u>The Complaint Does Not Adequately Allege, Let Alone Demonstrate, That the Purported "Credit" Is Subject to "Finance Charges."</u></h3>

Even if Cash Advances were to constitute "credit" under the relevant statutes, Plaintiff must still adequately plead (to meet Rule 12(b)(6)) or affirmatively demonstrate (to have any chance of avoiding arbitration) that Cash Advances are (1) payable "by a written agreement in more than four installments" or (2) subject to "finance charges." *See* 32 C.F.R. §§ 232.2(a)(1), 232.3(f)(1). Plaintiff cannot. Cash Advances are repaid—if at all—in a single installment and not "in more than four installments," nor does the Complaint allege otherwise. Nor are Cash Advances subject to a "finance charge," as that term is defined in MLA by incorporating TILA's definition promulgated in Regulation Z. 32 C.F.R. § 232.3(n).

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

12 C.F.R. § 1026.4(a).

Plaintiff alleges that he paid finance charges in the form of Express Fees and Subscription Charges. Compl. ¶ 94. Neither Cleo's Express Fees nor Subscription Fees constitute finance charges. *See, e.g.*, Compl. ¶¶ 2, 79.

<h4>i.    Optional Express Fees Are Not Finance Charges.</h4>

*First*, the Board of Governors of the Federal Reserve System (the "Board"), which at the time had rulemaking and enforcement authority over TILA,[14] determined that "most voluntary

---

[14] *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980) ("Unless demonstrably irrational, Federal Reserve Board staff opinions construing the [Truth in Lending] Act or Regulation [Z] should be dispositive for several reasons.").

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 18
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

fees" are excluded as finance charges "under the separate exclusion for charges that are payable in a comparable cash transaction."[15] That makes intuitive sense. Comparable expedite fees are frequently charged for non-credit products. For example, banks frequently charge fees to expedite settlement of check deposits. And virtually all digital wallets offer expedited withdrawals for additional fees.[16] Other analogous expedite and convenience fees include out-of-network ATM fees, and bank and credit union fees (such as expedited electronic payment fees or convenience fees for making loan payments by phone). These fees are not considered finance charges for purposes of TILA or MLA. Indeed, the Consumer Financial Protection Bureau ("CFPB") noted in its "market monitoring, [that the expedite fee] is approximately commensurate with the prevailing expedited transfer fees for non-credit products currently charged to consumers in the market," which, in part, justified the CFPB's determination that "this fee does not bear hallmarks of fees levied alongside an extension of credit."[17] Because expedite fees are charged in numerous comparable non-credit transactions, they are excluded as a matter of law from the definition of finance charge under TILA, and in turn, MLA. Such fees do not demonstrate that Cleo assessed finance charges.

*Second*, Cleo's express delivery method is not a "condition of" Cash Advances. As an initial matter, the Complaint itself acknowledges that this conclusory allegation is not actually true. *See, e.g.*, Compl. ¶ 45 ("users can use an EWA product without paying [expedite fees]") and ¶ 46 n. 20 ("[o]ne recent survey found 79% of EWA users typically paid expedite fees").

---

[15] *See Truth in Lending*, 61 Fed. Reg. 49237, 49239 (Sept. 19, 1996). Because "finance charge" is defined in the MLA in reference to the TILA definition provided under Regulation Z, *see* 32 C.F.R. § 232.3(n), including interpretations issued by an official or duly authorized employee, *see id.* at § 232.3(s), the Board's ruling-making likewise applies here.
[16] *See, e.g.*, Venmo, *Standard Bank Transfers FAQ*, https://help.venmo.com/hc/en-us/articles/235399967-Standard-Bank-Transfers-FAQ (last visited June 15, 2025) (describing a 1.75% fee, with a minimum of $0.25 and maximum of $25 to expedite transfer from the Venmo account to a bank account).
[17] *See* CFPB, Payactiv Approval Order, at 5 (Dec. 30, 2020), https://files.consumerfinance.gov/f/documents/cfpb_payactiv_approval-order_2020-12.pdf terminated on other grounds by CFPB, *Order to Terminate Sandbox Approval Order* (June 30, 2022), https://files.consumerfinance.gov/f/documents/cfpb_payactiv_termination-order_2022-06.pdf.

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 19
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

Since the Complaint does not allege that users are required to pay an express fee to obtain a Cash Advance (they are not), express fees are definitionally not a condition of the Cash Advance.

*Third*, Express Fees are not finance charges because they are not imposed "incident to" consumer credit.  In considering whether similar expedite fees—a fee to make an expedited repayment and a fee to expedite delivery of a credit card—were incident to or a condition of credit, the Board determined that they are not, thus concluding that analogous expedite fees were not finance charges.  *See* 12 C.F.R. pt. 1026, Supp. I ¶¶ 6(a)(2)-2(ix)-(x).  The Board reasoned that because consumers had free alternatives, such fees were not "incidental to the extension of credit."  *See* Proposed Rule, 67 Fed. Reg. 72518, 72619 (Dec. 6, 2002); Final Rule, 68 Fed. Reg. 16185, 16187 (Apr. 3, 2003).

A federal appeals court reached the same conclusion when evaluating a similar expedite fee.  In *Veale v. Citibank, F.S.B.*, the Eleventh Circuit held that avoidable mailing fees to expedite the mailing of documents and disbursement of a loan refinancing, which ultimately affected the total amount of interest the borrowers would need to pay, were not a finance charge because they were not incident to the extension of credit.  85 F.3d 577, 579 (11th Cir. 1996) ("Since the Veales could have chosen not to pay the Federal Express fee and the bank did not require it, then the fee was not imposed as an incident to the extension of credit and need not be included in the Finance Charge. . . . [T]he charge here was not incidental to the extension of credit.").  Regulators were aware of *Veale* when they promulgated Regulation Z and yet did not seek to modify its holding via rulemaking or otherwise.  *See Regulation Z; Truth in Lending*, 75 Fed. Reg. 58539, 58627, n. 77 (Sept. 24, 2010) (citing *Veale* favorably for a different holding).  Cleo's Express Fee is analogous to the expedite fee in *Veale*.  The Complaint does not allege facts sufficient to support the conclusory assertion that express fees are "finance charges."

### ii.  Subscription Fees Are Not Finance Charges.

Under TILA, subscription fees are not finance charges.  As an initial matter, subscription fees are specifically excluded from the definition of "finance charge" under 12 C.F.R.

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 20
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

1026.4(c)(4). And while there are certain (unapplicable) exceptions to this rule for charges based on "account activity or the amount of credit available," Cleo charges a Subscription Fee regardless of whether users take Cash Advances. *See* 12 C.F.R. pt. 1026, Supp. I, ¶ 4(c)(4).

MLA, for its part, expressly excludes "[f]ees charged for participation in a credit plan" from the definition of "finance charge." *See* 32 CFR 232.3(n) ("Finance charge has the same meaning as 'finance charge' in Regulation Z"); 12 C.F.R. 1026.4(c)(4). The subscription fees are effectively a fee imposed for participating in the Cleo Plus or Credit Builder programs, and MLA considers participation fees as part of the Military Annual Percentage Rate ("MAPR"), not as finance charges. *See* 32 C.F.R. 232.4(c)(1)(iii)(C) (distinguishing finance charge from MAPR). Section 232.4(c)(1)(iv) states that "[a]ny charge set forth in paragraphs (c)(1)(i) through (iii) of this section shall be included in the calculation of the MAPR even if that charge would be excluded from the finance charge under Regulation Z." *See also* Office of the Comptroller of the Currency, Comptroller's Handbook, Consumer Compliance, Military Lending Act, Appendix D: Fees and Charges Comparison (MLA MAPR and Regulation Z Finance Charge) (Version 1, May 2018) (separately considering finance charges and MAPR).[18] Defendant's subscription is a participation fee, not a finance charge, and thus cannot support either MLA or TILA claims.

Subscription fees like Cleo's fee are likewise excluded from the definition of "finance charge" under Regulation Z (which is relevant to both MLA and TILA), because they are "a type payable in a comparable cash transaction." 12 C.F.R. § 1026.4(a). The official interpretation to Regulation Z clarifies that the appropriate test to determine whether a charge qualifies for the exclusion involves "compar[ing] charges with those payable in a similar cash transaction by the seller of the property or service." 12 C.F.R. pt. 1026, Supp. I, ¶ 4(a) Official Interpretation; *see also Huertas v. Foulke Mgmt. Corp.*, No. 20-3443, 2021 U.S. App. LEXIS 35805, at *3–4 (3d Cir. Dec. 3, 2021) (processing charges that were the same whether a vehicle was financed with cash or

---

[18]    https://www.occ.gov/publications-and-resources/publications/comptrollers-handbook/files/military-lending-act/pub-ch-mla.pdf.

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 21
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000 FAX: 206.223.7107

credit was not a finance charge). Cleo's members pay the same monthly fee whether they use the Cash Advance service or not (and individuals can obtain Cash Advances without subscribing to either Cleo membership tier).

And, as discussed *supra*, Cleo users receive access to a host of other services when they subscribe to Cleo. As described in the TOS, Baker Decl., Ex. 1, and the Complaint, Compl. ¶ 48, Cleo's subscription tiers include numerous premium features such as a Credit Builder account. Plaintiff has not alleged which tier or tiers he subscribed to, or which Cleo features he utilized. Plaintiff has not plausibly alleged that he paid a subscription fee only for purposes of accessing Cash Advances (nor can he). Therefore, subscription fees are "of a type payable in a comparable cash transaction" and are not finance charges.

Plaintiff has not adequately alleged, let alone demonstrated, that Cleo's optional Express Fee or discretionary Subscription Fees are "finance charges." And because MLA and TLA apply only to credit that is subject to finance charges (and Cleo's advances are not credit that must be repaid in four or more installments), Plaintiff's claims fail as a matter of law.

## F. Should the Court Permit the Case to Continue and Find That the MLA Claim is Not Subject to Arbitration, the Court Should Nonetheless Dismiss the TILA Claim.

If the Court finds that Plaintiff's MLA claim is not subject to arbitration, nothing prevents it from sending the TILA claim to arbitration. *See Espin v. Citibank, N.A.*, 126 F.4th 1010, 1016–19 (4th Cir. 2025). In *Espin*, the Fourth Circuit compelled a claim under the Service Members Civil Relief Act to arbitration, finding nothing in the statutory text or Congressional record to suggest that those claims could not be arbitrated. *Id.* At the same time, it refused to compel plaintiff's MLA claim to arbitration because, in the context of that action, the MLA "manifest[ed] a congressional intent to override arbitration." *Id.* at 1019. Accordingly, both Plaintiff and the putative class's TILA claims should be dismissed and compelled to arbitration.

At the least, any putative class member who is not a Covered Member or dependent has no basis alleged in the Complaint to avoid mandatory arbitration. Plaintiff proposed the following

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 22
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

TILA Class: "All individuals in the United States that entered into an agreement with Cleo to use its "Cash Advance" (or substantially similar) product, in which Cleo was paid a finance charge (including, without limitation, an express fee or subscription charge, or tip)."[19] Compl. ¶ 109. The putative TILA Class is not limited to Covered Members or their dependents. As such, MLA's prohibition on arbitration provisions cannot possibly apply to the entire putative TILA class. Any putative class member who is not a Covered Member or dependent must proceed on their TILA claim on an individual basis.

G.    **If the Court Retains Jurisdiction Over the MLA and TILA Claims, it Should Dismiss the Complaint in its Entirety for Failure to State a Claim for Which Relief May be Granted.**

As set forth in Section IV.E, above, the Complaint does not sufficiently allege that Cash Advances constitute "credit" subject to a "finance charge." Plaintiff's MLA and TILA claims therefore should be dismissed under Rule 12(b)(6).

## V.    CONCLUSION

For the foregoing reasons, the Court should, at a minimum, order Plaintiff to submit his individual claims for arbitration, dismiss both the MLA and the TILA class claims in their entirety, and stay the civil action pending completion of the arbitration. In the alternative, if the Court determines that the Arbitration Provision is not enforceable as to Covered Members and dependents, this Court should dismiss the TILA class claims. To the extent the Court denies Defendant's motion to compel arbitration and retains jurisdiction over this action, the Complaint should be dismissed for failure to state a viable claim for which relief may be granted pursuant to Rule 12(b)(6).

---

[19] The Complaint mentions tips—even though Cleo does not have a tipping feature. In other words, Cleo does not solicit, ask for, or collect any tips from users.

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 23
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107

1    DATED:  June 16, 2025                    BALLARD SPAHR LLP

2                                             By: *s/ John S. Devlin III*
                                              John S. Devlin, III, WSBA No. 23988
3                                             devlinj@ballardspahr.com
                                              Erin M. Wilson, WSBA No. 42454
4                                             wilsonem@lanepowell.com
                                              1301 Second Avenue, Suite 2800
5                                             Seattle, WA 98101
                                              Tel: 206-223-7000
6                                             Fax: 206-223-7107

7                                             PAUL HASTINGS LLP

8                                             Allyson Baker (*pro hac vice*)
                                              allysonbaker@paulhastings.com
9                                             Meredith Boylan (*pro hac vice*)
                                              meredithboylan@paulhastings.com
10                                            Paul Hastings LLP
                                              2050 M Street, NW
11                                            Washington, DC 20036
                                              Telephone: (202) 551-1700
12                                            Facsimile: (202) 551-1705

13                                            Derek Wetmore (*pro hac vice*)
                                              derekwetmore@paulhastings.com
14                                            Paul Hastings LLP
                                              101 California Street
15                                            48th Floor
                                              San Francisco, CA 94111
16                                            Telephone: (415) 856-7000
                                              Facsimile: (415) 856-7100

17

18                                            *Attorneys for Defendant Cleo AI Inc.*

19                                            I certify that this memorandum contains 8,341
                                              words, in compliance with the Local Civil Rules.

20

21

22

23

24

25

26

MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE DISMISS - 24
CASE NO. 2:25-CV-00879-MLP

BALLARD SPAHR LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WA 98101
206.223.7000  FAX: 206.223.7107